Filed 10/19/21 (unmodified opinion attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| QUINN LI,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT<br>OF SACRAMENTO COUNTY,<br><br>Respondent;<br><br>MEDICAL BOARD OF CALIFORNIA,<br><br>Real Party in Interest. | C092584<br><br>(Super. Ct. No. 34202080003396)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 30, 2021, be modified as follows:

At the end of part IV (*Petitioner Fails To Show A Different Outcome Would Result*) of the Discussion, add the following footnote:

In his petition for rehearing, petitioner asserts this court "erred as a matter of law under the facts and scope of this appeal" in failing to remand the matter to the "trial court to reexamine [his] request for reconsideration under [our analysis] on the heightened standard of review in [section] 1094.5 proceedings." Petitioner fails to acknowledge the trial court's order was not based solely on the *Chamberlain* standard of review. The trial

1

court also denied the reconsideration motion under section 1008, subdivisions (a) and (e). Petitioner never addressed the propriety of that ground for the trial court's denial of his petition for reconsideration.

There is no change in the judgment.  The petition for rehearing is denied.

BY THE COURT:


/s/_____
Robie, Acting P. J.


/s/_____
Renner, J.


/s/_____
Krause, J.

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| QUINN LI, | C092584 |
| Petitioner, | (Super. Ct. No. 34202080003396) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| MEDICAL BOARD OF CALIFORNIA, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in mandate.  Petition denied.  James P. Arguelles, Judge.

La Follette, Johnson, DeHaas, Fesler & Ames, Nicole D. Hendrickson; Rothschild Wishek & Sands, Michael Rothschild; John D. Harwell; Max H. Hare, for Petitioner.

No appearance for Respondent.

Xavier Becerra, Attorney General, Gloria L. Castro, Senior Assistant Attorney General, Mary Cain-Simon, Supervising Deputy Attorney General, Rebecca D. Wagner, Deputy Attorney General, for Real Party in Interest.

For almost 45 years, California trial courts have followed the rule laid down by *Chamberlain* that a trial court exercising its independent judgment under Code of Civil

Procedure[1] section 1094.5 must determine whether the administrative agency's findings are supported by the preponderance of the evidence, notwithstanding the clear and convincing evidence standard of proof applied in the underlying administrative proceeding. (*Chamberlain v. Ventura County Civil Service Com.* (1977) 69 Cal.App.3d 362, 368-369 (*Chamberlain*); accord, *Ettinger v. Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 858 (*Ettinger*).) That rule was born out of the appellate court's interpretation that the weight of the evidence phrase in subdivision (c) of section 1094.5 is synonymous with the preponderance of the evidence standard of proof. (*Chamberlain*, at p. 368; see § 1094.5, subd. (c) ["Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by *the weight of the evidence*"], italics added.) No appellate court has disagreed with *Chamberlain* or its progeny and our Supreme Court has not, to our knowledge, reviewed or rendered a decision on the merits of the statutory interpretation.

In this writ proceeding, petitioner Quinn Li challenges the continued vitality of the *Chamberlain* rule, asserting our Supreme Court's recent *Conservatorship of O.B.* decision impliedly abrogated *Chamberlain*'s long-standing interpretation of section 1094.5, subdivision (c). (Citing *Conservatorship of O.B.* (2020) 9 Cal.5th 989.) In *Conservatorship of O.B.*, our Supreme Court held an appellate court applying the substantial evidence standard of review must account for the standard of proof required in the underlying proceeding when determining whether a finding is supported by the evidence. (*Id*. at pp. 995-996.) Thus, "[w]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is

---

[1] All further section references are to the Code of Civil Procedure unless otherwise specified.

whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Id.* at p. 1011.) Petitioner asserts the trial court acted in contravention of *Conservatorship of O.B.* when it denied petitioner's request to stay, during the pendency of his mandamus proceeding, the adverse disciplinary decision by real party in interest the Medical Board of California (the board) regarding petitioner's medical license, because the trial court used the preponderance of the evidence standard of proof rather than the clear and convincing standard of proof in evaluating the merits of the stay request.

We disagree with petitioner's implied abrogation argument but conclude, in sum, that a trial court reviewing an administrative agency's findings under the independent judgment standard of review in section 1094.5 must, like under the substantial evidence standard of review, account for the standard of proof required and applied in the underlying proceeding. We recognize this conclusion breaks with over four decades of established law. As we explain, however, after closely reexamining the statutory construction employed by the *Chamberlain* and *Ettinger* courts, it is clear there is no basis for the interpretation that the weight of the evidence phrase in section 1094.5 is synonymous with preponderance of the evidence.

Despite the significance of our conclusion on this important question of law, we deny petitioner's petition for writ of mandate because he fails to raise any argument demonstrating the correct application of the standard of review would have resulted in a different outcome in the trial court. Prejudicial error must be proven; it is not presumed.

FACTUAL AND PROCEDURAL BACKGROUND

The board revoked petitioner's medical license but stayed the revocation and placed petitioner on probation for three years pursuant to terms and conditions (the decision). Petitioner filed a petition for writ of mandate or, in the alternative, administrative mandate and also filed an ex parte application for an order staying the decision pursuant to section 1094.5, subdivision (h). In the stay application, petitioner

3

argued, among other things, that the board is unlikely to prevail in the matter because the decision "was taken in violation of the law, the wrong standard of proof was applied, the correct standard was not met, the findings are not supported by the evidence, the penalty exceeded the Board's authority under the law as it is punishment, not protective of the public, and the Board's Decision was just plain wrong."[2] The trial court denied the stay application.[3]

A few days after our Supreme Court filed *Conservatorship of O.B.*, petitioner asked the trial court to reconsider its denial of the stay application. Specifically, petitioner asked the trial court to "apply the clear and convincing evidentiary standard to the issue whether the [b]oard was unlikely to prevail on the merits, consistent with the holding in [*Conservatorship of*] *O.B.*" The trial court denied the application for reconsideration without explanation, citing only section 1008, subdivisions (a) and (e), section 1094.5, subdivisions (c) and (h), and *Chamberlain* for " 'the standard of proof in the original administrative proceedings is wholly irrelevant to the standard of proof applicable to a review of such proceedings.' "[4] (Citing *Chamberlain*, *supra*, 69 Cal.App.3d at p. 370.)

Petitioner filed a petition for writ of mandate in this court, requesting a stay of the board's decision and an order commanding the trial court to comply with "the standard of review and burden of proof rules articulated in" *Conservatorship of O.B.* We stayed the

---

[2]    Section 1094.5, subdivision (h)(1), provides the trial court shall not stay the operation of an administrative order or decision "unless the court is satisfied that the public interest will not suffer and that the licensed hospital or agency is unlikely to prevail ultimately on the merits."

[3]    We subsequently denied petitioner's petition for writ of mandate as to this ruling.

[4]    Based on the arguments presented in the parties' briefs, the parties interpret the order to mean the trial court found *Conservatorship of O.B.* resulted in no change in the law pertinent to its consideration of petitioner's stay request. We shall do the same.

board's decision and all further proceedings in the trial court and issued an order to show cause why relief should not be granted. The parties filed their respective briefs in response to the order to show cause. We now consider the merits.

DISCUSSION

Section 1094.5 "provides the basic framework by which an aggrieved party to an administrative proceeding may seek judicial review of any final order or decision rendered by a state or local agency." (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 137, fn. omitted.) Subdivision (c) of the statute "provides for both an independent judgment and a substantial evidence review of administrative decisions." (*Bixby*, at p. 137, italics omitted.) The trial court determines the applicable standard of review on a case-by-case basis by considering whether the administrative decision substantially affects a fundamental vested right. (*Id*. at p. 144.) "If the order or decision of the agency substantially affects a fundamental vested right, the trial court, in determining under section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in the light of the whole record." (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32.)

I

*The Independent Judgment Standard Of Review Applies*

We first address petitioner's confusing argument that *Conservatorship of O.B.* mandates the trial court shall apply the substantial evidence standard of review rather than the independent judgment standard of review in evaluating the merits of his

5

petition.**5** The independent judgment standard of review applies to agency decisions revoking or suspending a medical license. (*Moran v. Board of Medical Examiners* (1948) 32 Cal.2d 301, 302, 308; *Bixby v. Pierno*, *supra*, 4 Cal.3d at pp. 139, 146.) Our Supreme Court did not, in *Conservatorship of O.B.*, discuss or change the standard of review applicable to this proceeding.

II

*The Application Of Conservatorship Of O.B.*

*To The Standards Of Review In Section 1094.5*

In *Conservatorship of O.B.*, our Supreme Court granted review "to clarify how an appellate court is to review the sufficiency of the evidence associated with a finding made by the trier of fact pursuant to the clear and convincing standard." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 995.) The court explained "[t]here [wa]s a split of opinion over how an appellate court should address a claim of insufficient evidence" when the standard of proof in the underlying proceeding was clear and convincing evidence. (*Ibid.*) In the view of some appellate courts, such a review required the court to analyze "the record for substantial evidence in a manner mindful of the fact that the clear and convincing standard of proof applied before the trial court." (*Id.* at p. 1004.) Other

---

**5** Petitioner also confusingly asserts *Conservatorship of O.B.* compels reviewing courts in section 1094.5 cases "to determine whether the agency is unlikely to prevail ultimately on the merits by determining whether [the agency's] decision meets the 'clear and convincing' test, rather than the substantial evidence test." Petitioner confuses standard of proof and standard of review, the differences of which are discussed *post*. Petitioner further misapprehends the rule espoused in *Conservatorship of O.B.* Our Supreme Court did *not* state that the standard of proof in the underlying proceeding should be applied by a reviewing court "rather than the substantial evidence test." Rather, our Supreme Court concluded that a reviewing court applying the substantial evidence *standard of review* to "evaluat[e] the sufficiency of the evidence in support of a finding must make an appropriate adjustment to its analysis when the clear and convincing *standard of proof* applied before the trial court." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1005, italics added.)

6

appellate courts concluded "th[e] standard of proof has no bearing whatsoever on appellate review for sufficiency of the evidence," meaning the standard of review applies without regard to the standard of proof at trial. (*Id*. at p. 1003.) Our Supreme Court rejected the latter view, definitively ruling that, "[i]n general, when presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Id*. at p. 1005.)

The substantial evidence standard of review addressed and discussed in *Conservatorship of O.B.* pertained to an appellate court's review of trial court decisions. The *Conservatorship of O.B.* rule nonetheless unquestionably also applies to a trial court's substantial evidence review under section 1094.5. That is because "the superior court, in an administrative mandamus proceeding, must apply the 'substantial evidence' rule in the same manner that that rule is applied by appellate courts in California in reviewing decisions of trial courts." (*Beverly Hills Fed. S. & L. Assn. v. Superior Court* (1968) 259 Cal.App.2d 306, 317; accord, *American Federation of Teachers v. San Lorenzo etc. Sch. Dist.* (1969) 276 Cal.App.2d 132, 135.) And, section 1094.5's substantial evidence review sometimes applies to underlying administrative proceedings in which the standard of proof is clear and convincing evidence. (See, e.g., *SASCO Electric v. Fair Employment & Housing Com.* (2009) 176 Cal.App.4th 532, 535, 546 [upholding the trial court's conclusion "there [wa]s substantial evidence to support the [administrative] finding that there was clear and convincing evidence of oppression and malice on [employer's] part"].)

Our Supreme Court did not, however, in *Conservatorship of O.B.* consider or decide the scope of the independent judgment standard of review in section 1094.5 -- the standard of review at issue in this proceeding. We thus disagree with petitioner's assertion that our Supreme Court impliedly overruled *Chamberlain* and intended to

7

require a trial court to account for the standard of proof in the underlying proceeding when exercising its independent judgment under section 1094.5. (*Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [" '[i]t is axiomatic that cases are not authority for propositions not considered' "].) That said, we recognize the nonsensical conflict created by requiring a trial court to account for the clear and convincing evidence standard of proof in exercising substantial evidence review but not in exercising its independent judgment review.

First, independent judgment review, like substantial evidence review, applies to underlying proceedings governed by both the clear and convincing evidence and the preponderance of the evidence standards of proof. (See, e.g., *Ettinger*, *supra*, 135 Cal.App.3d at p. 856 [clear and convincing evidence standard of proof applied to a medical license revocation proceeding; independent judgment standard of review applied in trial court]; *San Benito Foods v. Veneman* (1996) 50 Cal.App.4th 1889, 1895, 1897 [preponderance of the evidence standard of proof applied to revocation of food processor's license; independent judgment standard of review applied in trial court].) As our Supreme Court said, " '[a]s a matter of logic, a finding that must be based on clear and convincing evidence cannot be viewed . . . the same as one that may be sustained on a mere preponderance.' " (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1005.) "[K]eeping the clear and convincing standard in mind when reviewing for sufficiency of the evidence helps ensure that an appropriate degree of [judicial] scrutiny attaches to findings to which this standard applies." (*Id.* at p. 1006.)

Second, substantial evidence review is *more deferential* to the fact finder than independent judgment review. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 818 & fn. 10 (*Fukuda*).) And, third, the purpose of independent judgment review is to protect individual liberty. (*Id.* at p. 816, fn. 8 [independent judgment review addresses concerns regarding the danger individuals face " 'from the dominance of government and other institutions wielding governmental power' "]; *Yakov v. Board of Medical Examiners*

8

(1968) 68 Cal.2d 67, 75 [the purpose of independent judgment review is to surround individual liberty rights "with a panoply of legal protection"].)

With the foregoing in mind, we took a closer look at the *Chamberlain* and *Ettinger* courts' statutory construction and interpretation of the weight of the evidence phrase with respect to independent judgment review in section 1094.5. We did so because we are convinced that, if the *Chamberlain* and *Ettinger* courts incorrectly concluded section 1094.5 expressly ties a preponderance of the evidence standard of proof to the independent judgment standard of review, logic and public policy support extending the "account for the standard of proof" rule to the independent judgment standard of review. Our research confirmed our suspicions; we find no basis for the *Chamberlain* and *Ettinger* courts' conclusion.

Before we delve into that analysis, however, we take a quick detour to address *Yazdi*, a case recently decided by the Second District Court of Appeal and relied upon by the board. (*Yazdi v. Dental Bd. of California* (2020) 57 Cal.App.5th 25.) In that case, the Second District Court of Appeal considered the application of *Conservatorship of O.B.* to the independent judgment standard of review under section 1094.5. The court concluded *Conservatorship of O.B.* did not "overturn[] the standard to be applied by the trial court in reviewing an administrative proceeding pursuant to a petition for writ of administrative mandate under Code of Civil Procedure section 1094.5." (*Yazdi*, at p. 33.) Two reasons informed the court's decision.

First, the court relied on the nature of the proceeding before our Supreme Court, explaining "[t]he [*Conservatorship of*] *O.B.* case involved an appeal from a probate proceeding, not an administrative mandate proceeding" and did not address "the decades of case law . . . concerning the review to be made initially in the trial court and subsequently by this court in the administrative mandate setting." (*Yazdi v. Dental Bd. of California*, *supra*, 57 Cal.App.5th at p. 33.) Second, the court stated a trial court's reweighing of the evidence under the independent judgment standard "runs contrary to

9

the language in the [*Conservatorship of*] *O.B.* decision . . . , stating that the trial court should *not* reweigh the evidence." (*Yazdi*, at pp. 33-34.) In sum, the Second District Court of Appeal was "not persuaded that the [*Conservatorship of*] *O.B.* decision intended to abolish the independent judgment standard in administrative mandate proceedings." (*Yazdi*, at p. 34.)

We agree with *Yazdi* that *Conservatorship of O.B.* did not consider nor decide the scope of the independent judgment standard of review under section 1094.5. We disagree, however, with the *Yazdi* court's intimation that *Conservatorship of O.B.* does not apply to *any* administrative mandate proceedings. (*Yazdi v. Dental Bd. of California*, *supra*, 57 Cal.App.5th at p. 33.) The application of *Conservatorship of O.B.* is not limited to probate proceedings. Our Supreme Court disapproved of nonprobate cases insofar as they were inconsistent with the court's rule (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1010, fn. 7) and the rule has subsequently been applied to issues outside the probate context (see, e.g., *King v. U.S. Bank National Assn.* (2020) 53 Cal.App.5th 675, 711 [applied to review of punitive damages award]; *Morgan v. J-M Manufacturing Co., Inc.* (2021) 60 Cal.App.5th 1078, 1089-1090 [same]; *In re Nathan E.* (2021) 61 Cal.App.5th 114, 123 [applied to dispositional order removing a child]). As explained *ante*, "the superior court, in an administrative mandamus proceeding, must apply the 'substantial evidence' rule in the same manner that that rule is applied by appellate courts in California in reviewing decisions of trial courts." (*Beverly Hills Fed. S. & L. Assn. v. Superior Court*, *supra*, 259 Cal.App.2d at p. 317.) Thus, to the extent *Yazdi* stands for the proposition that *Conservatorship of O.B.* does not apply to the substantial evidence standard of review in administrative mandate proceedings, we disagree.

10

III

*The Statutory Interpretation In Chamberlain And Ettinger Reexamined*

A

*The Statute's Legislative History*

In 1943, "the Legislature enacted and the Governor signed legislation directing the Judicial Council to 'make a thorough study of the subject . . . of review of decisions of administrative boards, commissions and officers[,] . . . formulate a comprehensive and detailed plan,' and report its recommendations to the Legislature along with 'drafts of such legislative measures as may be calculated to carry out and effectuate the plan.' [Citation.] The Judicial Council of California did so in its Tenth Biennial Report (1944) (Report). [Citation.] The Report recommended, and the Legislature adopted with only minor changes, three major pieces of legislation: a statewide Department of Administrative Procedure [citations]; the Administrative Procedure Act [citations]; and the statute that we consider in the case now before us, section 1094.5 [citations]." (*Fukuda*, *supra*, 20 Cal.4th at pp. 814-815.)

The Report " 'is a most valuable aid in ascertaining the meaning of [section 1094.5]. . . . [T]he council drafted this language at the request of the Legislature, and in this respect was a special legislative committee. As part of its special report containing the proposed legislation [the Judicial Council] told the Legislature what it intended to provide by the language used. *In the absence of compelling language in the statute to the contrary, it will be assumed that the Legislature adopted the proposed legislation with the intent and meaning expressed by the council in its report*.' " (*Fukuda*, *supra*, 20 Cal.4th at p. 816.)

Notably, the Judicial Council's recommendations focused on "a portion of the field of administrative adjudication which seemed most in need of improvement . . . [i.e.,] the one occupied by the agencies engaged in licensing and disciplining the members of the various professions and occupations." Thus, the Judicial Council stated "[t]he

11

proposed legislation [wa]s designed to provide a solution for many of the difficulties and injustices arising in the administrative licensing and disciplining of private citizens." In that vein, the Judicial Council noted its proposed language for section 1094.5 did "not depart from the procedural pattern laid down by recent court decisions" and was "modeled upon the statutory provisions suggested by other studies as well as upon the case law of this State". The Judicial Council explained the proposed statute provided "for the cases in which the court has the power to exercise an independent judgment on the evidence and also for the cases in which the court merely examines the record to ascertain whether the decision is supported by substantial evidence."

Section 1094.5 is a codification of the procedure devised for reviewing adjudicatory decisions of administrative agencies as discussed in *Drummey*, *Laisne*, *Walker*, *Dare*, and *Sipper*. (*Fukuda*, *supra*, 20 Cal.4th at pp. 811-814 [citing and discussing in part IIA: *Drummey v. State Bd. of Funeral Directors* (1939) 13 Cal.2d 75; *Laisne v. Cal. St. Bd. of Optometry* (1942) 19 Cal.2d 831; *Walker v. City of San Gabriel* (1942) 20 Cal.2d 879; *Dare v. Bd. of Medical Examiners* (1943) 21 Cal.2d 790; *Sipper v. Urban* (1943) 22 Cal.2d 138], 816 [the scope of review under section 1094.5 is the same as that specified in the cases outlined "in part II.A"].) We briefly discuss *Drummey* given its importance in the analysis that follows.

In *Drummey*, our Supreme Court addressed the scope of judicial review pertaining to an administrative agency's decision to cancel or suspend an existing license. (*Drummey v. State Bd. of Funeral Directors*, *supra*, 13 Cal.2d at p. 84.) The court held "that in such a proceeding the court to which the application for mandate is made must weigh the evidence, and exercise its independent judgment on the facts, as well as on the

12

law, if the complaining party is to be accorded his constitutional rights under the state and federal Constitutions."[6] (*Ibid.*)

Our Supreme Court relied, in part, on the United States Supreme Court's statement that: " 'Legislative agencies, with varying qualifications, work in a field peculiarly exposed to political demands. Some may be expert and impartial, others subservient. It is not difficult for them to observe the requirements of law in giving a hearing and receiving evidence. But to say that their findings of fact may be made conclusive where constitutional rights of liberty and property are involved, although the evidence clearly establishes that the findings are wrong and constitutional rights have been invaded, is to place those rights at the mercy of administrative officials and seriously to impair the security inherent in our judicial safeguards. That prospect, with our multiplication of administrative agencies, is not one to be lightly regarded. It is said that we can retain judicial authority to examine the weight of evidence when the question concerns the right of personal liberty.' " (*Drummey v. State Bd. of Funeral Directors*, *supra*, 13 Cal.2d at p. 85, quoting *St. Joseph Stock Yards Co. v. United States* (1936) 298 U.S. 38, 52 [80 L.Ed. 1033, 1041-1042]; *Drummey*, at p. 86 [finding the analysis in *St. Joseph Stock Yards Co.* to be sound].)

Our Supreme Court concluded that, in exercising its independent judgment, "[t]he findings of the board come before the court with a strong presumption of their correctness, and the burden rests on the complaining party to convince the court that the board's decision is contrary to the weight of the evidence." (*Drummey v. State Bd. of Funeral Directors*, *supra*, 13 Cal.2d at p. 85.) It explained that "[t]his procedure where

---

[6]     In *Fukuda*, our Supreme Court noted the reasoning of its plurality opinion in *Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335 "casts doubt on the suggestion in *Drummey* . . . that the independent judgment standard of judicial review is compelled by the due process clauses of the state and federal Constitutions." (*Fukuda*, 20 Cal.4th at p. 822, fn. 15.)

the courts in reviewing, in its broadest sense, the actions of administrative boards are given the power to weigh the evidence is not unknown to our present law," noting "State Bar disciplinary cases in which the court has power to weigh the evidence offer [an] illustration." (*Id*. at p. 86.)

B

*Chamberlain And Ettinger*

The meaning of the weight of the evidence phrase as to independent judgment review under section 1094.5 first came before the Second District Court of Appeal in 1977. (*Chamberlain*, *supra*, 69 Cal.App.3d at p. 367.) *Chamberlain* was the seminal case defining the phrase as synonymous with preponderance of the evidence. (*Id*. at p. 368.) The court explained the "apparent source of the [weight of the evidence] language of both section 1094.5 and of our Supreme Court in *Strumsky* [*v. San Diego County Employees Assn.*, *supra*, 11 Cal.3d at p. 32] which cites it, is the opinion in *Drummey v. State Bd. of Funeral Directors*[, *supra*,] 13 Cal.2d 75 . . . , in which the court established the constitutional requirement of independent judgment review and applied it to statewide agencies not vested with judicial powers." (*Chamberlain*, at p. 368.)

Quoting from *Drummey*, the *Chamberlain* court explained that, when a trial court considers a petition for writ of mandate to secure the restoration of a professional license, the exercise of the trial court's independent judgment on the facts " 'does not mean that the preliminary work performed by the administrative board in sifting the evidence and in making its findings is wasted effort. [Rather,] in weighing the evidence the courts can and should be assisted by the findings of the board. The findings of the board come before the court with a strong presumption of their correctness, and the burden rests on the complaining party to convince the court that the board's decision *is contrary to the weight of the evidence*.' " (*Chamberlain*, *supra*, 69 Cal.App.3d at p. 368, quoting *Drummey v. State Bd. of Funeral Directors*, *supra*, 13 Cal.2d at pp. 84-85.)

14

The *Chamberlain* court then said: "The purpose for which a court normally weighs the evidence is to determine which way it preponderates on a given issue. Evidence Code section 115 provides in pertinent part: 'Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.' Thus, an unexplained statement that a reviewing court shall weigh the evidence is a statement that it shall determine whether the evidence preponderates in favor of, or against, the administrative decision under review. Such interpretation is also required by the long standing practice of courts in this state to define 'preponderance of the evidence' in terms of the weight of the evidence." (*Chamberlain*, *supra*, 69 Cal.App.3d at pp. 368-369.) The court relied on two California Supreme Court opinions for the foregoing proposition.

As to the first case, the *Chamberlain* court noted our Supreme Court "defined 'preponderance of the evidence' as follows: 'The term simply means what it says, viz., that *the evidence on one side outweighs, preponderates over*, is more than, the evidence on the other side, not necessarily in number of witnesses or quantity, but in its effect on those to whom it is addressed.' " (*Chamberlain*, *supra*, 69 Cal.App.3d at p. 369, quoting *People v. Miller* (1916) 171 Cal. 649, 652-653.) As to the second case, the *Chamberlain* court explained, our Supreme Court "reject[ed] a claim that fraud was required to be proved by clear and convincing evidence," reasoning: " 'So in civil cases tried without a jury where fraud is an issue, *it is for the trial court to determine the weight of the evidence*, and while it cannot find fraud upon a mere suspicion, yet if there is any substantial evidence tending to prove fraud, it is for the trial court to determine whether such evidence *outweighs or preponderates over* that adduced in opposition thereto, and when the trial court has found that such evidence does so preponderate, its decision thereon is final, and an appellate court has no right or authority to disturb such a finding, even though the appellate court may be of a contrary opinion as to the weight of such evidence . . . .' " (*Chamberlain*, at p. 369, quoting *Noll v. Baida* (1927) 202 Cal. 98,

15

101.) In the *Chamberlain* court's view, "[t]he phrase 'determine the weight of the evidence' in *Noll* is virtually identical with that contained in Code of Civil Procedure section 1094.5" and thus the court concluded a trial court must "examine the evidence favoring the administrative determination . . . 'to determine whether such evidence outweighs or preponderates over that adduced in opposition thereto . . . .' " (*Chamberlain*, at pp. 369-370, quoting *Noll*, at p. 101.)

Next, the *Chamberlain* court considered the petitioner's argument that the trial court had to take into consideration the higher standard of proof required in the underlying proceeding, relying "upon the rule relating to charges of unprofessional conduct on the part of attorneys." (*Chamberlain*, *supra*, 69 Cal.App.3d at p. 370.) The court pointed to an apparent conflict between California Supreme Court cases in that regard[7] but concluded, "[i]n any event, the standard of proof in the original administrative proceedings is wholly irrelevant to the standard of proof applicable to a review of such proceedings." (*Chamberlain*, at p. 370.) The court said *Johnstone* supported its position because the court "based its reversal of the trial court judgment denying a writ of mandate upon the conclusion there was no 'substantial evidence to support the order of the city council,' thereby applying upon review a standard of proof even lower than that of 'preponderance of the evidence.' " (*Chamberlain*, at p. 370, citing *Johnstone v. City of Daly City* (1958) 156 Cal.App.2d 506.)

The *Chamberlain* court next analogized, in part, to review of factual determinations in criminal trials, explaining that, although "the standard of proof in the initial proceeding is proof beyond a reasonable doubt," "on review of such findings, the 'substantial evidence' test is applied." (*Chamberlain*, *supra*, 69 Cal.App.3d at p. 370.)

---

**7** Although immaterial to this appeal, we note the apparent conflict identified in *Chamberlain* was resolved in *Ettinger*, in which the court contrasted the vested rights regarding the revocation and suspension of professional licenses with the "mere termination of state employment." (*Ettinger*, *supra*, 135 Cal.App.3d at pp. 857-858.)

16

This long-standing rule, as the *Chamberlain* court referred to it, was purportedly reaffirmed in *Kunkin*, which provided: " 'The substantial evidence rule has received extended discussion and express reaffirmation in several of our recent cases. In *People v. Mosher* (1969) 1 Cal.3d 379, 395 . . . , we observed that "this court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. . . . If the circumstances reasonably justify the trial court's findings, an appellate court cannot reverse merely because the circumstances might also be reasonably reconciled with a contrary finding. . . . The test on appeal becomes whether *substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt*." ' " (*Chamberlain*, at pp. 370-371, quoting *People v. Kunkin* (1973) 9 Cal.3d 245, 250.)

The *Chamberlain* court concluded "the standard of proof on review of factual determinations of a tribunal is not a function of the standard of proof in the original proceedings before such tribunal. The standard of proof on review is, instead, governed by the degree to which it is appropriate to presume correctness of such determinations. The holding in *Strumsky* that an 'independent judgment' review is appropriate in the case of local administrative agency findings affecting vested fundamental rights is a determination that, as stated in *Drummey*, such findings 'come before the court with a strong presumption of their correctness . . . .' [Citation.] Though this presumption does not invoke the substantial evidence test, it does require the party challenging such findings to 'convince the court that the board's decision is contrary to the weight of the evidence.' " (*Chamberlain*, *supra*, 69 Cal.App.3d at p. 371.)

Approximately five years later, the Second District Court of Appeal reaffirmed *Chamberlain's* interpretation of section 1094.5, subdivision (c). In *Ettinger*, the court addressed two issues. First, the court held the clear and convincing standard of proof applies to administrative proceedings to revoke or suspend a medical license. (*Ettinger*,

17

*supra*, 135 Cal.App.3d at p. 856.)  The court explained, in important part as further discussed *post*, that the heightened standard of review applied in disciplinary proceedings involving other professional licenses, such as real estate brokers and attorneys.  (*Id.* at pp. 855-856.)  The court then specifically addressed attorney disciplinary proceedings, as follows:  "It is true that State Bar proceedings, although administrative, have been held to be of a nature all their own, neither civil nor criminal.  [Citations.]  However, when one compares the underlying policy considerations for that distinction with the policy considerations present in the instant case, substantial similarities can be seen.

"  ' "The State Bar Act is designed to provide a procedure whereby those attorneys at law who prove recreant to their trust may be removed from the ranks of the profession. The public, as well as the legal profession and the courts must be protected from those who do not measure up to their responsibilities. . . .  The purpose of disbarment proceedings is not to punish the individual but to determine whether the attorney should continue in that capacity." '  [Citation.]

"The purpose of an administrative proceeding concerning the revocation or suspension of a license is not to punish the individual; the purpose is to protect the public from dishonest, immoral, disreputable or incompetent practitioners.  [Citations.]

"Since it is apparent that the underlying purpose of disciplining both attorneys and physicians is protection of the public, it would be anomalous to require a higher degree of proof in disciplinary hearings involving attorneys or real estate agents than in hearings involving physicians." (*Ettinger*, *supra*, 135 Cal.App.3d at p. 856.)

The second issue the *Ettinger* court addressed was whether the clear and convincing standard of proof affected the independent judgment standard of review under section 1094.5.  (*Ettinger*, *supra*, 135 Cal.App.3d at p. 858.)  It concluded it did not.  The court said "[the weight of the evidence] standard is considered to be synonymous with the *preponderance of the evidence* standard." (*Ibid.*, citing *People v. Miller*, *supra*, 171 Cal. at p. 654 & *Lawyer v. Los Angeles Pacific Co.* (1913) 23 Cal.App. 543, 546.)  The court

further agreed with *Chamberlain* that, "the standard of proof used in the original proceeding is completely irrelevant." (*Ettinger*, at p. 858.)

Our research revealed no subsequent appellate history for *Chamberlain* or *Ettinger*. In other words, our Supreme Court has not had the opportunity to consider the propriety of the conclusions espoused in those cases. Our Supreme Court has, however, cited favorably to both cases for reasons other than the section 1094.5, subdivision (c) interpretation. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 789 [citing *Ettinger* for its application of the clear and convincing standard of proof in professional license revocation proceedings]; *Kapelus v. State Bar* (1987) 44 Cal.3d 179, 184, fn. 1 [same]; *Fukuda*, *supra*, 20 Cal.4th at p. 817 [citing *Chamberlain* for "quoting *Drummey's* 'strong presumption of . . . correctness' and burden of proof qualifications on independent judgment review"].)

C

*Weight Of The Evidence Is Not Always Synonymous With*

*Preponderance Of The Evidence*

The pertinent question in *Chamberlain* and *Ettinger* was, and is before us today, what meaning the Legislature intended to attach to the weight of the evidence phrase in section 1094.5. "The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent." (*People v. Flores* (2003) 30 Cal.4th 1059, 1063.) "In interpreting a statute where the language is clear, courts must follow its plain meaning. [Citation.] However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. [Citation.] In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an

19

interpretation that would lead to absurd consequences." ' " (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003.)

The *Chamberlain* and *Ettinger* courts essentially relied on two principles for the conclusion that the weight of the evidence phrase in section 1094.5 is synonymous with preponderance of the evidence. The first was that the interpretation was consistent with Evidence Code section 115 and established common law; the second was that, because a trial court reviews findings made in an administrative proceeding, the standard of proof used in the original proceeding is irrelevant. Neither principle supports the conclusion reached.

First, the *Chamberlain* court's reliance on Evidence Code section 115 presents an obvious timing issue. The court invoked the portion of the statute providing that " '[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence' " to reach the conclusion that "an unexplained statement that a reviewing court shall weigh the evidence is a statement that it shall determine whether the evidence preponderates in favor of, or against, the administrative decision under review." (*Chamberlain*, *supra*, 69 Cal.App.3d at pp. 368-369.) But Evidence Code section 115 was enacted 20 years *after* the Legislature enacted section 1094.5. The Legislature thus could not have contemplated *Chamberlain's* proposed fusion of the two statutes when it enacted section 1094.5.

It is further informative that, from around the turn of the prior century up to at least 1961, former section 2061, occasion 5, provided "[t]hat in civil cases the affirmative of the issue must be proved, and when the evidence is contradictory the decision must be made according to the preponderance of evidence; that in criminal cases guilt must be established beyond reasonable doubt." The statute was repealed when Evidence Code section 115 was enacted. (Stats. 1965, ch. 299, § 127.) Nothing in section 2061 provided "[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence" -- the portion of Evidence Code section 115 relied upon

20

by the *Chamberlain* court.  Moreover, section 2061 was frequently described as enumerated matters affecting the weight of evidence (*People v. Moran* (1904) 144 Cal. 48, 63) or weight of the evidence rules (see, e.g., *People v. Grill* (1907) 151 Cal. 592, 597, overruled on another ground in *People v. Henderson* (1963) 60 Cal.2d 482; *People v. King* (1951) 103 Cal.App.2d 122, 128).  Thus, the weight of the evidence phrase was used in common law to reference *both* preponderance of the evidence and guilt beyond a reasonable doubt before and around the time section 1094.5 was enacted.

Second, the cases relied upon by the *Chamberlain* and *Ettinger* courts do not reveal a legislative intent to define weight of the evidence as preponderance of the evidence *in mandamus proceedings*.  The *Chamberlain* court relied on *Miller* and *Noll*. (*Chamberlain*, *supra*, 69 Cal.App.3d at p. 369, citing *People v. Miller*, *supra*, 171 Cal. at pp. 652-653 & *Noll v. Baida*, *supra*, 202 Cal. at p. 101.)  The *Ettinger* court relied on *Miller* and *Lawyer*.  (*Ettinger*, *supra*, 135 Cal.App.3d at p. 858, citing *People v. Miller*, *supra*, 171 Cal. at p. 654 & *Lawyer v. Los Angeles Pacific Co.*, *supra*, 23 Cal.App. at p. 546.)  Notably, *Miller* and *Lawyer*, in turn, relied on *Murphy*.  (*People v. Miller*, *supra*, 171 Cal. at p. 654, quoting *Murphy v. Waterhouse* (1896) 113 Cal. 467, 473; *Lawyer v. Los Angeles Pacific Co.*, *supra*, 23 Cal.App. at p. 546, citing *Murphy*, at p. 473.)

Our Supreme Court, in *Miller*, considered whether the trial court's insanity instruction as to the meaning of preponderance of the evidence was erroneous.  (*People v. Miller*, *supra*, 171 Cal. at pp. 650-651.)  It concluded the trial court erred because the instruction given "was substantially the same as that of proof beyond a reasonable doubt."  (*Id*. at p. 651.)  On pages 652 and 653 of *Miller*, the pages upon which the *Chamberlain* court relied (*Chamberlain*, *supra*, 69 Cal.App.3d at p. 369), our Supreme Court explained the meaning of preponderance of the evidence, citing and quoting several cases.  (*Miller*, at pp. 652-653.)  The court said preponderance of the evidence "simply means what it says, viz., that the evidence on one side outweighs, preponderates over, is more than, the evidence on the other side, not necessarily in number of witnesses

21

or quantity, but in its effect on those to whom it is addressed." (*Id.* at p. 652.) The cases cited and discussed by the court addressed preponderance of the evidence in terms of having greater weight than or preponderating over other evidence. (*Id.* at p. 653.) Nothing on pages 652 or 653 equates the weight of the evidence phrase with preponderance of the evidence, nor is there any discussion as to the meaning of that phrase.

A different page in *Miller* caught the eye of the *Ettinger* court. *Ettinger* cited page 654 in *Miller* (*Ettinger*, *supra*, 135 Cal.App.3d at p. 858), which in the absence of any analysis or discussion was presumably intended to direct the reader to the *Murphy* quote that " 'the weight of evidence or preponderance of probability is sufficient to establish a fact in a civil case.' " (*People v. Miller*, *supra*, 171 Cal. at p. 654, quoting *Murphy v. Waterhouse*, *supra*, 113 Cal. at p. 473.) *Lawyer*, the second case relied upon by the *Ettinger* court (*Ettinger*, at p. 858), also relied on the *Murphy* quote for its conclusion that "the use of the term 'preponderance of probability,' as synonymous with the weight of evidence, has received the sanction of the supreme court of this state." (*Lawyer v. Los Angeles Pacific Co.*, *supra*, 23 Cal.App. at p. 546.) And, in *Noll*, relied upon in *Chamberlain* (*Chamberlain*, *supra*, 69 Cal.App.3d at pp. 369-370), the court rejected the assertion that civil fraud had to be proven by clear and convincing evidence and, "in doing so reaffirmed the standard of proof by a preponderance of the evidence" (*Liodas v. Sahadi* (1977) 19 Cal.3d 278, 289, discussing *Noll v. Baida*, *supra*, 202 Cal. at p. 101).

Two glaring issues arise from the conclusion that *Miller*, *Murphy*, *Noll*, and *Lawyer* unequivocally render the weight of the evidence phrase in section 1094.5 synonymous with the preponderance of the evidence standard of proof. First, the cases were all *civil actions* that considered the phrase within *that* context. Even if our Supreme Court sanctioned the use of weight of the evidence as a term of art in *civil actions*, it does not inform whether the *Legislature* intended the phrase to mean preponderance of the evidence in section 1094.5, a statute governing *special proceedings of a civil nature and*

22

*not civil actions*.  (*Binyon v. State of California* (1993) 17 Cal.App.4th 952, 954-955 [" '[t]he judicial remedy of mandamus is not a civil action, but a special proceeding of a civil nature, which is available for specified purposes and for which the code provides a separate procedure' "]; *Dhillon v. John Muir Health* (2017) 2 Cal.5th 1109, 1115 ["[a]n application for a writ of administrative mandamus is a 'special proceeding of a civil nature' "].)  In fact, the Legislature referred to applications for a writ of mandate as special proceedings of a civil nature well before the enactment of section 1094.5.  (See, e.g., *Jones v. Board of Police Commissioners* (1903) 141 Cal. 96, 98.)

Second, while a court may, in construing a term of art, consider the history of a term's legal interpretation as a guide to the Legislature's intended meaning rather than its dictionary definition (*Irvin v. Contra Costa County Employees' Retirement Assn.* (2017) 13 Cal.App.5th 162, 174), the *Chamberlain* and *Ettinger* courts failed to recognize that our Supreme Court did not uniformly employ the weight of the evidence phrase as a synonym for preponderance of the evidence.  Indeed, prior to the enactment of section 1094.5, our Supreme Court and appellate courts sometimes used the phrase to generally refer to the standard of proof in the underlying proceeding or the degree to which the fact finder finds the evidence probative.  (See, e.g., *People v. Travers* (1891) 88 Cal. 233, 237 [addressing "the difference in the weight of evidence required in civil and criminal cases"]; *People v. Bushton* (1889) 80 Cal. 160, 164 ["[t]he well-settled rule that a defendant shall not be convicted unless the evidence proves his guilt beyond a reasonable doubt applies to the whole and every material part of the case . . . [¶] . . . [and] [a]ny other rule as to the weight of the evidence makes one measure applicable to one part of the case and a different one to another part, and leads to confusion ]; *People v. Barker* (1938) 29 Cal.App.2d Supp. 766, 771 [" 'A judgment in a civil action is not admissible in a subsequent criminal prosecution, although exactly the same questions are in dispute in both cases, for the reason that the parties are not the same, and different rules as to the weight of the evidence prevail' "]; *Wilcoxson v. Burton* (1865) 27 Cal. 228,

23

232 ["We have examined the testimony contained in the voluminous record filed in this action with patient attention; and have furthermore availed ourselves of the thorough and exhaustive discussion of counsel upon the weight of the evidence and the conclusions properly to be drawn from it, and we are satisfied not only that the case is one where the evidence is in conflict, but one in which the court below did not so far mistake the relative weight of the opposing proofs as to justify us in going behind the special findings"]; *Howland v. Oakland C.S.R. Co.* (1895) 110 Cal. 513, 521-522 [objection as to the sufficiency of a witness's knowledge "goes more to the weight of the evidence than its admissibility"]; *People v. Sanders* (1896) 114 Cal. 216, 235 ["the weight of the evidence . . . was exclusively for the jury" such that "how much or how little importance should be attached to it was for the jury alone to say"].)

Even more pertinent is the fact that our Supreme Court, prior to the enactment of section 1094.5, used the weight of the evidence phrase in attorney disciplinary proceedings when it applied its independent judgment to determine whether the findings were supported by clear and convincing evidence. Our Supreme Court explained it reviewed the entire record "to ascertain *the weight of the evidence* and whether . . . any charge has been proven against petitioner which merits his disbarment" (*Narlian v. State Bar of California* (1943) 21 Cal.2d 876, 880-881, italics added) by clear and convincing evidence (*Hildebrand v. State Bar of California* (1941) 18 Cal.2d 816, 828). (See also *Furman v. State Bar of California* (1938) 12 Cal.2d 212, 214, 229 [the court "can and always does pass upon the weight of the evidence" in attorney discipline cases to determine if guilt is established by " 'convincing proof to a reasonable certainty' "].)

That the weight of the evidence phrase was used by our Supreme Court in attorney disciplinary proceedings when taking into account the clear and convincing standard of proof is significant because *Drummey*, the source of the weight of the evidence language in section 1094.5 (as noted by *Chamberlain*, *supra*, 69 Cal.App.3d at p. 368), relied on our Supreme Court's standard of review in attorney disciplinary cases as an illustration of

24

how a reviewing court exercises its independent judgment when "given the power to weigh the evidence." (*Drummey*, *supra*, 13 Cal.2d at p. 86.) As the *Ettinger* court noted, the public policy considerations in attorney disciplinary proceedings are the same as in other licensing disciplinary proceedings. (*Ettinger*, *supra*, 135 Cal.App.3d at p. 856.)

Notably, our Supreme Court continues to use the weight of the evidence phrase in a manner that accounts for the clear and convincing evidence standard of proof in attorney disciplinary proceedings. In 1991, our Supreme Court adopted then California Rules of Court, rule 954(a)(4) (now California Rules of Court, rule 9.16) which provides the court will order review of a decision of the State Bar Court recommending disbarment or suspension from practice when, among other grounds, it appears the decision is not supported "by the weight of the evidence." In *In re Menna*, a case decided approximately four years later, the court reversed a determination that an applicant had the requisite good moral character to be certified for admission. (*In re Menna* (1995) 11 Cal.4th 975, 979.) The court explained "[b]oth the hearing department and the review panel of the State Bar Court evaluated the evidence of rehabilitation under a heightened 'clear and convincing' standard" and the question was "whether the evidence support[ed] the State Bar Court's determination he met that standard." (*Id.* at pp. 986-987.) After reviewing the evidence, the court concluded it was not persuaded the applicant had "demonstrated his overall rehabilitation by clear and convincing evidence." (*Id.* at p. 988.) Thus, the State Bar Court's "determination [wa]s not supported by the weight of the evidence; nor [wa]s it appropriate in light of the record as a whole." (*Id*. at p. 979.)

In an analogous proceeding involving judicial discipline, our Supreme Court held it would independently evaluate the record evidence in reviewing a recommendation by the Commission on Judicial Qualifications to remove a sitting judge from the bench. (*Geiler v. Commission on Judicial Qualifications* (1973) 10 Cal.3d 270, 276.) In that case, the court "independently f[ou]nd upon clear and convincing evidence in accord with the findings of the Commission" that, subject to some qualifications, the judge's conduct

25

constituted willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. (*Id*. at p. 281.)

The point is that, although the *Chamberlain* and *Ettinger* courts seemingly relied on the dictionary definition of the weight of the evidence phrase laid out in California Words, Phrases, and Maxims,[8] the dictionary formulated the definition without taking into account the inconsistencies in the common law noted *ante* with regard to the use of the phrase in other proceedings.[9] The phrase weight of the evidence simply has not been uniformly used as a synonym for preponderance of the evidence in California common law. Thus, as our Supreme Court noted in *Conservatorship of O.B.*, "even if we were to regard [California Supreme Court] case law as informing prevailing expectations among legislators, and these expectations as reflective of legislative intent" in interpreting section 1094.5, we could not reasonably conclude the Legislature intended the phrase to

---

[8] California Words, Phrases, and Maxims states our Supreme Court in *Murphy* and *Miller* said " 'weight of evidence' or 'preponderance of probability' is sufficient to establish a fact in a civil case." (California Words, Phrases, and Maxims (1960) p. 555, citing *Murphy v. Waterhouse*, *supra*, 113 Cal. 467 & *People v. Miller*, *supra*, 171 Cal. at p. 654.) It further cites *Lawyer* for the proposition that "[t]he use of the term 'preponderance of probability,' as synonymous with 'weight of evidence,' has received the sanction of the supreme court of this state, and therefore, an instruction that the weight of evidence, or preponderance of probability, is sufficient to establish a fact in a civil case, was not error." (California Words, Phrases, and Maxims, at p. 555, citing *Lawyer v. Los Angeles Pacific Co.*, *supra*, 23 Cal.App. at p. 546.)

[9] Notably, in 1930 and 1948, around the time section 1094.5 was enacted, the Law Dictionary with Pronunciations by James A. Ballentine defined "weight of evidence" as "not a question of mathematics, but depends on its effect in inducing belief. One witness may be contradicted by several and yet his testimony may outweigh all of theirs. The question is not on which side are the witnesses more numerous, but what is to be believed." (Ballentine, Law Dict. with Pronunciations (1930) p. 1360; Ballentine, Law Dict. with Pronunciations (2d ed. 1948) p. 1360.) The dictionary thus ascribed to "weight" as applied to evidence a meaning of degree of probative value -- a meaning sanctioned by our Supreme Court as recently as last year. (*People v. Turner* (2020) 10 Cal.5th 786, 805 ["[w]eight" in relation to evidence "describes the degree to which the jury [or fact finder] finds the evidence probative"].)

mean preponderance of the evidence by implicitly incorporating only the cases identified in *Chamberlain* and *Ettinger*. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1011 [interpreting Probate Code section 1801, Legislature not "regarded as having implicitly incorporated th[e] judicially created rule [that the standard of proof disappears on appeal] within the statute" because the court's "precedent did *not* consistently articulate th[at] view"].)

The *Chamberlain* court's discussion of the *Johnstone* case also reveals a fundamental misapprehension of the concepts of burden of proof, standard of proof, and standard of review, which are distinct concepts. The substantial evidence standard of review is not "a standard of proof even lower than that of 'preponderance of the evidence,' " as the *Chamberlain* court proclaimed. (*Chamberlain*, *supra*, 69 Cal.App.3d at p. 370.)

The *burden of proof* is a party's duty or obligation " 'to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court.' " (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 997, quoting Evid. Code, § 115.) The *standard of proof* refers to the requisite degree or level of proof demanded to prove a specific allegation in a given case -- i.e., preponderance of the evidence, clear and convincing proof, or proof beyond a reasonable doubt. (*Conservatorship of O.B.*, at pp. 997-998 ["The standard of proof that applies to a particular determination serves 'to instruct the fact finder concerning the degree of confidence our society deems necessary in the correctness of factual conclusions for a particular type of adjudication, to allocate the risk of error between the litigants, and to indicate the relative importance attached to the ultimate decision' "].)

A *standard of review*, in contrast, defines a reviewing court's scope of review. (*Peplinski v. Fobe's Roofing* (1995) 193 Wis.2d 6, 13, fn. 1 [531 N.W.2d 597, 599].) It prescribes the degree of deference given by the reviewing court to the findings reached in a decision under review, providing " 'the power of the lens' through which the

27

[reviewing] court looks at the issue in a particular case." (*Commonwealth v. Ratsamy* (2007) 594 Pa. 176, 180 [934 A.2d 1233, 1235]; *Estate of Ekic v. Geico Indem. Co.* (2018) 163 Idaho 895, 897 [422 P.3d 1101, 1103].) " 'It is widely agreed that the primary function of a standard of review is to apportion power and, consequently, responsibility between trial and appellate courts for determining an issue or a class of issues. . . . In determining the appropriateness of a particular allocation of responsibility for deciding an issue or a class of issues, account should be taken of the relative capabilities of each level of the court system to take evidence and make findings of fact in the face of conflicting evidence, on the one hand, and to set binding jurisdiction-wide policy, on the other.' " (*Tetra Tech EC, Inc. v. Dept. of Revenue* (2018) 382 Wis.2d 496, 530, fn. 23 [914 N.W.2d 21, 38], quoting *Utah v. Thurman* (Utah 1993) 846 P.2d 1256, 1265-1266.) Substantial evidence and independent judgment are standards of review. (See *Fukuda*, *supra*, 20 Cal.4th at p. 824.)

In *Johnstone*, the appellate court considered whether substantial evidence supported a city council's adverse employment decision. (*Johnstone v. City of Daly City*, *supra*, 156 Cal.App.2d at pp. 507, 515.) The court said: " 'It may be conceded that in disciplinary administrative proceedings the burden of proof is upon the party asserting the affirmative [citation], and that guilt must be established to a reasonable certainty [citations] and cannot be based on surmise or conjecture, suspicion or theoretical conclusions, or uncorroborated hearsay.' " (*Id*. at pp. 515-516.) The court concluded "the record show[ed] that appellant was discharged from his position on charges that were based on suspicion, conjecture and hearsay, and not on substantial evidence necessary to warrant his discharge. Suspicion, conjecture and hearsay, even though strong, are not sufficient under our law to constitute evidence and warrant a discharge from a civil service position." (*Id*. at p. 516.) Nothing in *Johnstone* supports the blanket assertion that "the standard of proof in the original administrative proceedings is wholly irrelevant to the standard of proof applicable to a review of such proceedings."

28

(*Chamberlain*, *supra*, 69 Cal.App.3d at p. 370.) Moreover, nothing in *Johnstone* indicates the court applied "a standard of proof even lower than that of 'preponderance of the evidence.' " (*Chamberlain*, at p. 370.) The *Johnstone* court merely concluded the city council failed to identify *probative evidence* supporting its determination.

The criminal case relied upon by the *Chamberlain* court also does not support the assertion that the standard of proof in the original proceeding is irrelevant in the review of such a proceeding. True, as noted in *Chamberlain*, *supra*, 69 Cal.App.3d at pages 370 through 371, our Supreme Court said " '[t]he test on appeal becomes whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt.' " (*People v. Kunkin*, *supra*, 9 Cal.3d at p. 250.) But what *Chamberlain* missed is the next paragraph, in which our Supreme Court further said: "In *People v. Reilly* (1970) 3 Cal.3d 421, 425 . . . , we emphasized that reasonableness was the ultimate standard under the substantial evidence rule. '*The appellate court must determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt.*' " (*Kunkin*, at p. 250, italics added.) Thus, in applying the substantial evidence standard of review in criminal proceedings, the standard of proof does not disappear upon review. Although the reviewing court does not under the substantial evidence standard of review weigh the evidence to determine whether the evidence proves guilt beyond a reasonable doubt, it determines whether a reasonable trier of fact could have come to that conclusion. As our Supreme Court reiterated in *Conservatorship of O.B.*, "the firmly established rule in criminal cases [is] that the prosecution's burden of proving a defendant's guilt beyond a reasonable doubt affects how an appellate court reviews the record for substantial evidence." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1007.)

Nothing in the legislative history indicates that the Legislature intended to build a preponderance of the evidence standard of proof into the independent judgment standard of review requiring the trial court to disregard the standard of proof in the underlying

29

administrative proceeding. By prescribing that the trial court shall review "the weight of the evidence," the Legislature did not prescribe by *what weight* the evidence shall be reviewed. Logic and the public policy considerations discussed in *Conservatorship of O.B.* lead to the conclusion that the trial court *must* account for the standard of proof in the underlying proceeding when exercising its independent judgment under section 1094.5.

We find no merit in the board's argument that requiring the trial court to account for the clear and convincing standard of proof in the underlying administrative proceeding when applying independent judgment review to the findings would conflict with the principles of deference or presumptive correctness laid down in *Fukuda*. "In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda*, *supra*, 20 Cal.4th at p. 817.) Further, " 'considerable weight should be given to the findings of experienced administrative bodies made after a full and formal hearing, especially in cases involving technical and scientific evidence.' " (*Id.* at p. 812.)

Under our analysis, all that would be required is for the trial court to apply the principles of deference and presumptive correctness *in the context of* whether the findings are supported by clear and convincing evidence, rather than a mere preponderance of the evidence. We can discern no conflict with *Fukuda*. It is also notable that the presumption of correctness is a starting point "but it is only a presumption, and may be overcome. Because the trial court ultimately must exercise its own independent judgment, that court is free to substitute its own findings after first giving due respect to the agency's findings. This approach to the trial court's exercise of independent judgment long has been understood . . . ." (*Fukuda*, *supra*, 20 Cal.4th at pp. 818-819.)

30

In sum, we disagree with the conclusion reached in *Chamberlain* and *Ettinger* and believe a trial court must account for the standard of proof in the underlying administrative proceeding when exercising its independent judgment in reviewing the sufficiency of the evidence supporting the administrative agency's findings.

IV

*Petitioner Fails To Show A Different Outcome Would Result*

Although we agree with petitioner that a trial court should account for the clear and convincing evidence standard of proof when exercising its independent judgment under section 1094.5, we conclude no remedy is available to petitioner for failing to demonstrate, in his petition, that he would have received a different outcome had the trial court done so. (*Fisher v. State Personnel Bd.* (2018) 25 Cal.App.5th 1, 20 ["Reversible error requires demonstration of prejudice arising from the reasonable probability the party 'would have obtained a better outcome' in the absence of the error' "].) Petitioner's attempt to remedy the deficiency in his reply brief is to no avail. We do not consider arguments raised for the first time in a reply brief. (*Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1061, fn. 7; *People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.)

DISPOSITION

The petition for writ of mandate is denied. The September 18, 2020, stay of the board's decision and the proceedings in the superior court is vacated.

/s/_____
Robie, Acting P.J.

We concur:

/s/_____
Renner, J.

/s/_____
Krause, J.

31